UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| JESSIE LEE HATCHER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| v. ) | No. 3:14-CV-44 |
| ) | (MATTICE/GUYTON) |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Summary Judgment and supporting memorandum, filed July 18, 2014. [Doc. 19 & 21]. Also before the Court is Defendant's Motion for Summary Judgment and Memorandum in Support [Doc. 24 & 25]. Plaintiff Jessie Lee Hatcher seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner").

On February 18, 2011, Plaintiff protectively filed an application for Social Security Disability Insurance Benefits with an alleged onset date July 10, 2006. [Tr. 117-19; 29]. The Social Security Administration denied Plaintiff's application initially and upon reconsideration. [Tr. 73-75; 78-79]. Plaintiff timely filed her request for a hearing, and appeared before Administrative Law Judge, Robert Erwin, in Knoxville, Tennessee on August 30, 2012. [Tr. 83; 28]. The ALJ issued an unfavorable decision on September 12, 2012. [Tr. 10-27]. Plaintiff filed

her appeal of the decision, which the Appeals Council declined to review on December 6, 2013. [Tr. 7-9; 1-6].

Plaintiff filed a complaint with this Court on February 4, 2014, seeking judicial review of the Commissioner's final decision under Section 205(g) of the Social Security Act. [Doc. 2]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## I. ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2011.
>
> 2. As discussed in the JURSIDICTION AND PROCEDURAL HISTORY *supra*, the doctrine of administrative *res judicata* applies and the unadjudicated period in the case *sub judice* is December 7, 2010, the day after the date of prior unfavorable decision, through December 31, 2011, the date last insured.
>
> 3. The claimant did not engage in substantial gainful activity during the period from December 7, 2010 through December 31, 2011 (20 CFR 404.1571 *et seq.*).
>
> 4. From December 7, 2010 through December 31, 2011, the claimant had the following "severe" impairments: *degenerative disc disease of the cervical and lumbar spine; depression; and anxiety* (20 CFR 404.1520(c)).
>
> 5. From December 7, 2010, through December 31, 2011, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).
>
> 6. After careful consideration of the entire record, the undersigned finds that from December 7, 2010, through December 31, 2011, the claimant had the residual functional capacity to occasionally lift and/or carry (including upward pulling) up to 20 pounds; frequently lift and/or carry (including upward pulling) up to 10

2

pounds; stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday; sit (with normal breaks) for a total of about 6 hours in an 8-hour workday. She can *occasionally* climb, balance, stoop, kneel, crouch, and/or crawl. She is precluded from more than occasional reaching overhead with the bilateral upper extremities. She can do detailed work. Concentration, persistence, and pace can be maintained for 2-hour periods during the workday. She can interact appropriately in the workplace, although she will do better in settings with limited social exposure. She can adapt to infrequent changes in the work routine.

7. From December 7, 2010, through December 31, 2011, the claimant was capable of performing past relevant work as a Cashier or as an Assembler. These jobs did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

8. The claimant was not under a disability, as defined in the Social Security Act, at any time from December 7, 2010, through December 31, 2011, the date last insured (20 CFR 404.1520(f)).

[Tr. 15-24].

## II. DISABILITY ELIGIBILITY

To qualify for SSI benefits, Plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work

3

experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity ("SGA"), his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment ("the Listings"), claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

### III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled

4

pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo,* nor resolve conflicts in evidence, nor decide questions of credibility." Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v.

5

Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See Id. at 547.

On review, Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

### IV. EVIDENCE

#### A. *Medical Evidence*

On February 18, 2011, Plaintiff protectively filed an application for Social Security Disability Insurance Benefits with an alleged onset date July 10, 2006. [Tr. 117-19; 29]. She was fifty years old at the time of her application and reported that she completed the 11th grade. [Tr. 129; 134]. She has past relevant work experience as a cashier and machine operator. [Tr. 134]. Plaintiff reported that she ceased work on July 10, 2006 due to her conditions of fibromyalgia, shoulder pain, back pain, fatigue, high blood pressure, and depression. [Tr. 133].

A MRI was conducted on October 11, 2004 that showed degenerative spondylosis at Plaintiff's mid to lower lumbar spine and a bulging disc at C5-6. [Tr. 189]. The test revealed "mild bilaterial foraminal stenosis at C5-6 and C6-7[,] and Dr. Glenn E. Jung concluded that "I

6

do not see a discrete disc herniation or cord impingement at any level." [Id.]

Plaintiff received medical treatment from Dr. Peter G. Stimpson beginning in 2004 for complaints of chronic pain. [Tr. 182-88]. On April 10, 2011, Dr. Stimpson submitted a medical report regarding Plaintiff's disability application, diagnosing Plaintiff with depression and degenerative disc disease. [Tr. 191-95]. In regards to her psychiatric symptoms, Dr. Stimpson reported that Plaintiff was prescribed psychotropic medication but failed to list the specific medications. [Tr. 192]. He found that she was severely impaired in her ability to concentrate and interact socially and noted that she had expressed suicidal thoughts. [Id.]. He further reported that although Plaintiff could manage her own funds, she was incapable of carrying out 1-2 step instructions, maintaining a work routine, caring for her personal hygiene, responding appropriately to stress and work changes, and maintaining independence in daily activities. [Tr. 193].

A physical therapist, Eric S. Jones, completed a Medical Source Statement regarding Plaintiff's physical impairments on August 16, 2012, of which Dr. Stimpson concurred. [Tr. 247-53]. Mr. Jones stated that Plaintiff could occasionally lift no more than ten pounds and could never carry anything over ten pounds. [Tr. 247]. He stated that Plaintiff required a cane to ambulate due to decreased gate stability and decreased balance reactions. [Tr. 247-48]. He reported that without a cane, Plaintiff could never carry small objects and that she could only sit for up to twenty minutes, stand for up to ten minutes, and walk up to six minutes. [Tr. 248]. Mr. Jones further assessed that Plaintiff could only occasionally reach, handle, finger, feel, push, and pull and that she could never operate foot controls. [Tr. 249].

Dr. William J. Kenney conducted a clinical evaluation on June 6, 2011. [Tr. 202-04]. During the exam, Plaintiff stated that she dropped out of school in the 9th grade and was fired

7

from her job in 2006 due to tardiness. [Tr. 202]. She reported that she was prescribed Xanax, Lisinopril, Estradiol, Microzide, Oxycodone, and Roxicodone. [Id.]. She stated that she had never received formal mental health treatment or attempted to injure herself. [Id.]. Her self-reported daily activities included laundry, household chores, cooking, going to the tanning bed, shopping, and occasionally going to restaurants. [Tr. 203]. Dr. Kenney found that Plaintiff had mild limitations in her ability to understand and remember, moderate limitations in her ability to maintain concentration and persistence and interact socially, and moderate to marked limitations in her ability to adapt. [Tr. 204].

Dr. Victor O'Bryan submitted a psychiatric analysis on June 13, 2011. [Tr. 210]. He found that Plaintiff had mild limitations in daily activities, moderate limitations in social functioning and maintaining concentration, persistence, or pace ("CPP"), and no episodes of decompensation. [Tr. 220]. He assessed that Plaintiff could do detailed work, maintain CPP for two hours during an eight-hour workday, interact appropriately in a workplace setting (although she would do better in an environment with limited social interaction), and adapt to infrequent changes in her work routine. [Tr. 226].

Dr. Nathaniel Robinson submitted a physical residual functional assessment on June 29, 2011. [Tr. 233-41]. He assessed Plaintiff with the ability to occasionally lift 20 pounds, frequently lift 10 pounds, and sit or stand for approximately 6 hours in an 8-hour workday. [Tr. 234]. He reported that she could occasionally climb, balance, stoop, kneel, crouch, and crawl. [Tr. 235]. Dr. Robinson explained that, in reviewing Plaintiff's record, he did not give Dr. Stimpson's RFC assessment controlling weight because his findings, including his assessment that Plaintiff could not sustain a forty-hour work week, were inconsistent with his own exam notes and subsequent functional assessments, as well as the rest of the evidence on file. [Tr.

8

239]. Dr. Robinson further noted that the record was absent any evidence that could account for the alleged severity of Plaintiff's pain, specifically her purported difficulty in picking up a six-pack of beverages, walking 100 yards, or requiring a cane to ambulate. [Tr. 238]. He found her daily activities to be incompatible with her alleged limitations. [Id.].

### B. *Other Evidence*

The ALJ conducted a hearing on August 30, 2012, at which the Plaintiff and vocational expert, Ernest Brewer, testified. [Tr. 28-48]. The ALJ issued an unfavorable decision on September 12, 2012. [Tr. 10-27]. The ALJ noted Plaintiff's previous application for benefits and found that "the doctrine of *res judicata* applies, and the unadjudicated period in the case *sub judice* is December 7, 2010, the day after the date of [the] prior unfavorable decision, through December 31, 2011, the date last insured. [Tr. 15]. The ALJ next considered whether Plaintiff's severe impairments satisfied the criteria of any listed impairment and found in the negative. [Tr. 16]. The ALJ specifically determined that none of Plaintiff's physical impairments had the "gravity of symptoms nor medical documentation in order to establish or even suggest an impairment of listing-level severity." [Id.]. The ALJ went on to consider Plaintiff's mental impairments under Listing 12.00, and specifically found that she failed to meet the criteria of either 12.04 or 12.06. [Tr. 16-17]. Finally, the ALJ declined to move to step five of the disability analysis because he found that, based on Plaintiff's assessed RFC during the unadjudicated timeframe, she was capable of performing her past relevant work as a cashier or factory assembly worker. [Tr. 23]. Ernest Brewer confirmed the same during the administrative hearing. [Tr. 45-47].

### V. POSITIONS OF THE PARTIES

Plaintiff's primary argument is that the ALJ erred in determining her physical and mental

9

impairments did not satisfy the Listings. Plaintiff argues that she meets the criteria for both 1.04 and 12.04. Finally, the Plaintiff submits that her RFC satisfies the Medical-Vocational Guidelines ("Grids") Rule 201.09, requiring a finding a disability.

The Commissioner responds that the Plaintiff failed to meet her burden of proof at step three, and she argues specifically that her impairments fail to satisfy either 1.04 or 12.04. Finally, the Commissioner contends that Plaintiff's argument regarding the Medical Vocational Guidelines Rule 201.09 is moot because the guidelines are only applicable at step five of the disability analysis. The Commissioner reasons that the ALJ's assessment that Plaintiff could perform past relevant work was based on substantial evidence, and as such, the disability analysis was properly concluded at step four, making any step five analysis unnecessary and immaterial.

## VI. ANALYSIS

The Court will address each of the issues presented by Plaintiff in turn.

### A. *Res Judicata* Effect of Prior Decision

The Court finds that the ALJ properly applied the doctrine of *res judicata* to this matter. Although a claimant can request to have an application reopened, a denial of such a request is unreviewable by the courts. See Califano v. Sanders, 430 U.S. 99, 108 (1977) (explaining that judicial review is limited to "a particular type of agency action, [namely] a 'final decision of the Secretary made after a hearing.'" (quoting 42 U.S.C. § 405(b)). Our Supreme Court went on to explain that review of such cases is only appropriate where a claimant challenges the Secretary's decision based on a colorable constitutional claim. See id.; Bogle v. Sullivan, 998 F.2d 342, 346 (6th Cir. 1993) ("when a prior decision is not reopened, this court has no jurisdiction to review

10

the actions of the Secretary on the earlier claim in the absence of a colorable constitutional claim.")

Here, Plaintiff makes no such claim, and the Court finds that the ALJ properly limited his review to the unadjudicated period between December 7, 2010 and December 31, 2011. The Plaintiff reported her alleged onset date as July 6, 2006, over four years prior to the previous ALJ decision issued on December 6, 2010. [Tr. 117-19; 29; 57-66]. Therefore, the period from Plaintiff's alleged onset date through December 6, 2010 was previously adjudicated, not subject to reopening, and is therefore beyond the review of the ALJ and this Court.

Further, the Court concurs in the ALJ's reliance on <u>Drummond v. Commissioner of Social Security</u>, 126 F.3d 837 (6th Cir. 1997) in finding that a "slight departure" from the previous ALJ's RFC determination was proper based on new and material evidence. [Tr. 19]. Specifically, the Court concurs with the ALJ that the Plaintiff submitted pertinent medical evidence requiring reconsideration of her RFC during the unadjudicated period and finds that the ALJ's RFC determination in this matter is supported by substantial evidence.

**B.  The Listings**

The Court finds that the ALJ did not err at step three of the disability analysis. Once a plaintiff proves the existence of a severe impairment, it must be analyzed under the Listings set forth in 20 C.F.R. § 404, Subpart P, Appendix 1. See <u>Reynolds v. Comm'r of Soc. Sec.</u>, 424 F. App'x 411, 415 (6th Cir. 2011) (finding that "[a]n administrative law judge must compare the medical evidence with the requirements for listed impairments in considering whether the condition is equivalent in severity to the medical findings for any Listed Impairment."). If a claimant's impairment or combination of impairments satisfies the Listings, the claimant is considered disabled. 20 C.F.R. § 404.1525(c)(3). The claimant has the burden of establishing

11

that his impairment meets or equals a listed impairment. Walters, 127 F.3d at 529. If an ALJ's determination at step three is based on substantial evidence, than it is final and must be affirmed. Warner, 375 F.3d at 390.

The Court will examine each of the listed impairments identified by the Plaintiff in turn.

### 1. 1.04

Plaintiff claims that she satisfies Listing 1.04 and that the ALJ erred in not finding the same. The Court disagrees. In order to meet Listing 1.04 *Disorders of the Spine*, which includes degenerative disc disease, a claimant must show:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); Or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; Or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. § Pt. 404, Subpt. P, App. 1.

Here, the ALJ found that Plaintiff's degenerative disc disease of the cervical and lumbar spine was a severe impairment. [Tr. 16]. However, at step three, the ALJ held that none of Plaintiff's physical impairments had the "gravity of symptoms nor medical documentation in

order to establish or even suggest an impairment of listing-level severity." [Id.]. The Court concurs and finds this assessment to be supported by substantial evidence.

Although the ALJ did not specifically address Listing 1.04 at step three, the Court finds this error to be harmless. See Bledsoe v. Barnhart, 165 F. App'x 408, 411 (6th Cir. 2006) (finding that "[t]he ALJ did not err by not spelling out every consideration that went into the step three determination . . . [t]he ALJ described evidence pertaining to all impairments, both severe and non-severe . . . five pages earlier in his opinion and made factual findings. The ALJ explicitly stated that he considered the combination of all impairments even though he did not spell out every fact a second time under the step three analysis."). At step three, the ALJ specifically stated that he "considered all listings relative to the above-captioned impairments; however, the medical evidence does not support the criteriae of said listings[.]" [Tr. 16] (misspelling in the original).

Further, the ALJ fully assessed Plaintiff's degenerative disc disease at step four. The ALJ found that Plaintiff's allegations of back pain were "generally consistent with the treating records and have therefore been given adequate accommodation in the residual functional capacity articulated herein." [Tr. 19]. However, the ALJ explained that the degree of Plaintiff's alleged impairments were unsupported by the evidence. [Tr. 19-20]. He specifically noted her conservative medical treatment, range of motion tests that revealed an overall normal range of motion, lack of treatment notes from Dr. Stimpson evidencing any debilitating pain, and the lack of any suggestion of surgery for her degenerative disc disease. [Tr. 20].

The ALJ also considered and addressed Dr. Stimpson's records, finding his opinion lacked credibility and his assessment to be "incredibly over-restrictive, and *at best*, tenuous and patently sympathetic to the claimant's unreliable subjective complaints." [Tr. 22] (emphasis in

13

the original). The ALJ explained that although treating physician opinions are generally entitled to controlling weight, the rule was inapplicable because Dr. Stimpson's opinion of disability was "entirely inconsistent with the record as a whole, including [his] own treating notes and range of motion assessment[.]" [Id.]. He further noted that Dr. Stimpson did not complete the medical assessment form himself, but merely concurred in the assessment of the physical therapist, Mr. Eric Jones, who is "not an 'acceptable medical source' under the Regulations[.]" [Id.].

The Court finds that the ALJ's decision is supported by substantial evidence, and the record as a whole lacks any evidence to support a finding that Plaintiff satisfies Listing 1.04. The only imaging of record, an MRI taken in 2004, is outside the purview of the ALJ's review based on the doctrine of *res judicata*. Further, even if the test was relevant to Plaintiff's most recent disability application, it fails to satisfy the criteria of 1.04. The MRI shows only slight degenerative spondylosis without any evidence of "discrete disc herniation or cord impingement at any level." [Tr. 189]. The Court further concurs in the ALJ's assessment of Dr. Stimpson's opinion and finds that his decision to grant it little weight is supported by substantial evidence. See Adams v. Massanari, 55 F. App'x 279, 284 (6th Cir. 2003) (although treating physician opinions at step three may be granted great weight, such consideration is only appropriate where "they are supported by objective medical evidence.") (citing Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001)).

Although it would have been helpful for the ALJ to expressly address Listing 1.04 at step three, any error in this regard is harmless. The ALJ fully considered Plaintiff's degenerative disc disease elsewhere in the opinion and provided specific reasons, supported by the record as a whole, that her degenerative disc disease failed to satisfy any listed impairment. The Court finds

14

that the ALJ adhered to agency regulations in assessing Plaintiff's physical impairments at step three and that his determination is supported by substantial evidence.

### *2. 12.04 and 12.06*

The Court finds the ALJ's determination that Plaintiff's mental impairments do not satisfy Listings 12.04 or 12.06 to be based on substantial evidence. The ALJ considered whether Plaintiff's impairments satisfied the four criteria of 12.00 Organic Mental Disorders, namely, activities of daily living, social functioning, CPP, and episodes of decompensation. [Tr. 16]; see 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00(C).

The ALJ considered all four of these requirements in turn. The ALJ found that the "overall record fails to show any evidence of significant deficits in *daily functioning*[,]" noting Plaintiff's ability to care for her personal hygiene, perform household chores, cook, shop, do puzzles, watch television, visit restaurants, and go to the tanning bed. [Tr. 17] (emphasis in the original). The ALJ next established that the Plaintiff had only moderate difficulties with social functioning and maintaining concentration, persistence, or pace. [Id.]. The ALJ relied on Plaintiff's ability to "function in an appropriate manner in the public domain in such places as doctor's offices, grocery stores, restaurants, and other facilities." [Id.]. He further stated that Plaintiff maintained the ability to complete tasks, evidenced by her ability to "pay bills, count change, and use a checkbook and/or money orders[.]" [Id.]. Finally, the ALJ found that Plaintiff had experienced no episodes of decompensation of extended duration. [Id.].

Next, the ALJ specifically considered whether Plaintiff's mental impairments satisfied the "paragraph B" criteria inherent in 12.04 and 12.06. [Id.]. To satisfy Paragraph B in both 12.04 *Affective Mood Disorders* and 12.06 *Anxiety Related Disorders*, at least two of the following must be proven: marked restriction of activities of daily living; marked difficulties in

15

maintaining social functioning; marked difficulties in maintaining CPP; or repeated episodes of decompensation, each of extended duration. 20 C.F.R. § Pt. 404, Subpt. P, App. 1. As explained above, the ALJ addressed these criteria and found no marked restrictions or episodes of decompensation. [Tr. 17-18].

Finally, the ALJ considered Paragraph C criteria for each listing. In regards to 12.04, the ALJ concurred with Dr. O'Bryan, finding that:

> [T]he evidence fails to demonstrate a medically-documented history of a chronic affective disorder of at least two years duration that has caused more than a minimal limitation in the claimant's ability to do any basic work activities, with any of the following signs or symptoms:
>
> 1. Repeated episodes of decompensation, each of extended duration;
> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
> 3. Current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

[Tr. 18]; see 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.04(C). In regards to 12.06, the ALJ found that "the claimant's impairments have not resulted in a <u>complete</u> inability to function outside the area of her home." [Tr. 18]; see 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.06(C) (emphasis in the original).

The Plaintiff contends that she satisfies Listing 12.04 because she was diagnosed with depressive disorder, anxiety order, and prescribed Xanax to treat her anxiety. [Doc. 21 at 2-3]. Yet a diagnosis of depression and anxiety and a prescription for anti-anxiety medication is a far cry from meeting a listed impairment. Plaintiff failed to provide any explanation of why her mental impairments satisfy 12.04, neglecting to mention any of the specific requirements of the

16

Listing. Therefore, the Court finds that the Plaintiff failed to meet her burden of proving disability at step three and that the ALJ properly considered the record as a whole when determining whether Plaintiff's mental impairments satisfied the Listings. The ALJ's assessment at step three is wholly supported by substantial evidence and must be affirmed.

**B. Medical Vocational Guidelines**

The Plaintiff argues that the ALJ erred in failing to adhere to the Medical Vocational Guidelines Rule 201.09 because her RFC precluded her ability to work based on her approaching advanced age, limited education, and unskilled past relevant work. [Doc. 20 at 3]. The Court finds this argument to be moot and without merit.

Once the ALJ determines that a claimant can perform past relevant work, the disability analysis is complete and the claimant is determined not disabled. See 20 C.F.R. § 404.1520(a)(4)(iv) (the disability concludes at step four because "[i]f you can still do your past relevant work, we will find that you are not disabled."). Further, the Medical-Vocational Guidelines are only employed at step five of the disability analysis, once the burden shifts to the Commissioner to prove that there are jobs in the national economy which the claimant can perform. See Walters, 127 F.3d at 529 (explaining that only once a claimant meets her burden that she incapable of performing past relevant work does the burden shift to the Commissioner); see also Heckler v. Campbell, 461 U.S. 458, 461 (1983) (noting that the Medical Vocational Guidelines were created to aid the Commissioner at step five in order to "improve both the uniformity and efficiency of this determination[.]").

Here, the ALJ concluded that the Plaintiff can perform her past relevant work as a cashier and factory assembly worker, and the Court finds this determination to be supported by substantial evidence. Therefore, the ALJ's disability analysis properly concluded at step four,

17

making step five irrelevant and unnecessary.  Any argument that the ALJ erred in failing to consider the Medical Vocational Guidelines is therefore moot and immaterial.

## VII. CONCLUSION

Based upon the foregoing, it is hereby **RECOMMENDED**[1] that Plaintiff's Motion For Summary Judgment **[Doc. 19]** be **DENIED** and that the Commissioner's Motion for Summary Judgment **[Doc. 24]** be **GRANTED.**

> Respectfully submitted,
>
> *Bruce Guyton*
> United States Magistrate Judge

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985).  The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general.  Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986).  Only specific objections are reserved for appellate review.  Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).